IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:11-CV-147-FL

| | |
|---|---|
| RHONDA RICHMOND, )<br>)<br>Plaintiff/Claimant, )<br>)<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, Commissioner of )<br>Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND<br>RECOMMENDATION** |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-38, DE-43] pursuant to Fed. R. Civ. P. 12(c). Claimant Rhonda Richmond ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). Claimant responded [DE-46] to Defendant's motion and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

**STATEMENT OF THE CASE**

Claimant protectively filed an application for a period of disability and DIB on 13 November 2008, alleging disability beginning 1 November 2003. (R. 13). Her claim was denied initially and upon reconsideration. *Id.* A hearing before the Administrative Law Judge ("ALJ") was held on 23

November 2010, at which Claimant was represented by counsel. (R. 26-50). On 14 December 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 10-19). On 25 May 2011, the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive ...." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla ... and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(2).

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of the medical record; (2) improper evaluation of medical opinion evidence; and (3) improper reliance on the Medical-Vocational Guidelines listed in 20 C.F.R. § 404, Subpart P, Appendix 2 ("the Grids"). Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") at 1, 9, 11.

3

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 15). Next, the ALJ determined Claimant had the following severe impairments: lumbar disc disease with radiculopathy and post-traumatic osteoarthritis of the right foot. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform the full range of light work.[1] (R. 16). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 18). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work. (R. 18).

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

While not raised by either party as error, the court acknowledges that within the ALJ's RFC discussion, the ALJ stated Claimant's musculoskeletal impairments did not prevent her from, *inter alia*, "lifting or carrying at least 25 pounds frequently and 50 pounds occasionally" (R. 17-18) – a requirement of medium work. 20 C.F.R. § 404.1567(c). The reference to medium work is clearly a typographical error as it is evident from the ALJ's decision that he intended only to find Claimant capable of performing light work as indicated by the RFC header and the step-four determination. (R. 16, 18).

4

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 38 years old and unemployed. (R. 18, 24). Claimant attained an eighth grade education and "did some high school." (R. 31, 48). Claimant was last employed as a certified nursing assistant. (R. 31).

Claimant testified that she is unable to work due to pain associated with her right foot and back and to "anxiety post-traumatic stress disorder" (" anxiety PTSD"). Claimant testified to having undergone surgery on her foot in 2003 and that as a result, she is unable to move her foot side-to-side. (R. 32, 43). Claimant explained when she is "on [her] feet," her right foot "swells up and it pops really bad." (R. 42-43). Claimant underwent back surgery in 2005. (R. 32). Claimant testified she "did pretty good" for the first six months subsequent to the surgery but thereafter it was discovered the disc between L-F and S-1 was protruding "out the left side." (R. 32, 37, 41). Claimant takes numerous medications for her foot and back pain. (R. 34). Claimant has undergone pain management in the past, has received epidural steroidal injections, and has had physical therapy. (R. 37-38). Claimant takes medication three times a day for anxiety PTSD. (R. 33).

Claimant testified that she cannot stand more than thirty minutes without experiencing pain in her left hip and thigh and her buttocks. (R. 35, 37). Claimant cannot sit for more than 20 minutes and cannot walk a block without needing to rest. (R. 41-42). Claimant has difficulty bending and stooping as a result of her back pain. (R. 44). While Claimant is capable of driving, someone must accompany her because she experiences anxiety attacks. (R. 33, 44). Claimant testified to experiencing three such attacks while driving to the administrative hearing. (R. 33). Claimant goes grocery shopping but relies on the assistance of both her mother and daughter. (R. 45). Claimant performs no household chores. (R. 35).

5

## DISCUSSION

### I. The ALJ properly evaluated the medical record.

Claimant contends the ALJ mischaracterized the medical records regarding her low back pain and the pain, swelling and neurological deficits associated with her left foot. Pl.'s Mem. at 9-11.

First, Claimant contends the ALJ "acted as if [Claimant's] 2005 back surgery cured her problems and that it was only in 2009 over a year after her date last insured ["DLI"] that these problems reoccurred, but this is simply not what the record reflects." *Id.* Rather, Claimant contends evidence of continued back pain and limitations therefrom "occurred after her surgery and before the expiration of her [DLI]." *Id.* at 10. In support of her position that her "lumbar pathologies" were "truly chronic in nature" during the relevant time period, Claimant relies on the following evidence: (1) an April 2006 progress report by Sean Hsu, M.D., Claimant's neurosurgeon, (2) a state-agency consultative examination dated 22 January 2007, by Wesley W. Murfin, M.D., and (3) a 22 January 2007 progress report from the Naval Hospital at Camp Lejeune. *Id.* at 9.

Upon reviewing the ALJ's decision, it is evident the ALJ did not state nor infer that the 2005 back surgery "cured" Claimant's problems. Moreover, the ALJ did not mischaracterize the medical record regarding Claimant's back pain. In discussing Claimant's low back pain, the ALJ noted Claimant had complained of back pain "since at least July 2004," citing a 8 July 2004 CT scan of the lumbar spine which revealed disc protrusions at L4-L5 and L5-S1. (R. 17, 352). The ALJ then noted that following a November 2004 medical visit for left lower extremity pain, a December 2004 MRI revealed a herniated disc at L4-5 causing left lateral recess stenosis for which Claimant underwent laminectomy and discectomy surgery in March 2005. (R. 17, 306, 377-78). The ALJ then discussed the April 2006 progress report by Dr. Hsu, wherein it was noted that Claimant had

6

done well postoperatively until March 2006, when she complained of recurrent low back pain radiating into her right leg after falling while lifting a box. (R. 17, 369). The ALJ noted further an April 2006 MRI revealed degenerative changes at L4-5 and L5-S1 but no recurrent or residual disc herniation. (R. 17, 334). The ALJ discussed also the findings of Dr. Murfin, noting in particular Dr. Murfin's opinion that Claimant experienced some limitation in standing and walking. (R. 17). The ALJ did not discuss the 2007 records from the Naval Hospital cited by Claimant; however, the ALJ is not required to discuss all evidence in the record. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Moreover, the court observes only the January 2007 progress report mentions Claimant's back pain. (R. 655). Specifically, that report notes only Claimant's complaint of back and hip pain and her request for a referral to a neurosurgeon. (R. 655). The remainder of the 2007 records discuss issues associated with Claimant's complaints of nasal congestion, sinus pain and head congestion. (R. 640-54).

The ALJ's decision makes it clear that he also considered Claimant's treatment for back pain in 2009 and 2010, subsequent to the DLI. (R. 17); *see Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987) (explaining medical evidence generated subsequent to a claimant's DLI may be relevant to a disability determination where the evidence relates back to the claimant's limitations prior to the DLI). However, as the ALJ properly noted, the lumbar pain described therein did not begin until October 2008. (R. 17); *see* (R. 808) (July 2010 treatment record from Dr. Hsu noting Claimant "had left L4,5 microdiscetomy on 3/2/05 and did well from that. However, she developed recurrent radicular and increased discogneic pain around October 2008"); (R. 675) (June 2009 treatment record from Dr. Hsu noting Claimant presented "with current lumbar problems starting around 10/08 . . . [and] had left L4,5 microdiscectomy and did well from that").

7

Nothing in the decision suggests the ALJ believed Claimant was pain-free or "cured" as argued by Claimant. However, with respect to the relevant time period, the ALJ noted that while Claimant experienced pain following the surgical repair of her herniated lumbar disc, the relevant evidence indicated Claimant had only moderate limitations of motion of her lumbar spine with no other abnormalities of her cervical spine or extremities in 2007. (R. 17, 448, 451). The ALJ's consideration of Claimant's back pain was proper.

Next, Claimant contends the ALJ "misstated the record regarding [Claimant's] foot when he argued that though [the] tomography scan indicated a lack of compete fusion in one area, she did not seek further treatment until her 2010 X-ray which showed solid fusion of the bones with no other deformities." Pl.'s Mem. at 10. In particular, Claimant relies on the following: (1) the consultative examination performed by Dr. Murfin, wherein Claimant described "swelling off and on in the foot and pain if she walks for a prolonged time such as more than one hour" (R. 49); (2) treatment from the Naval Hospital in April and June 2008 for foot swelling and pain (R. 629, 635); and (3) a March 2010 emergency room visit for severe foot pain (R. 784-86, 791-792). Pl.'s Mem. at 10.

Regarding Dr. Murfin's examination, the ALJ explicitly acknowledged that Dr. Murfin "reported in January 2007 that the claimant had some limitation in standing, walking and moving." (R. 17). Morever, the court observes that despite Claimant's contention to the contrary, Dr. Murfin's examination was performed pursuant to the request of the Commissioner and not for treatment purposes, as suggested by Claimant. Next, as for the 2008 Naval Hospital records, the April 2008 record indicates Claimant sought emergency treatment for right foot pain and swelling. (R. 635). The June 2008 record, which indicates Claimant sought treatment for anxiety attacks, noted Claimant's recent emergency room visit and her continued complaint of swelling. (R. 629).

8

Claimant correctly notes that the ALJ ignored this evidence. However, as noted previously, the ALJ is not required to discuss all evidence in the record. *See Dyer*, 395 F.3d at 1211. Moreover, Claimant does not explain how these post-DLI records relate to the relevant period and thus has failed to explain how the omission of the April and June 2008 evidence within the ALJ's discussion is an omission of "obviously probative" evidence. *See White v. Astrue*, No. 2:08-CV-20-FL, 2009 U.S. Dist. LEXIS 60309, at *11-*12, 2009 WL 2135081, at *4 (E.D.N.C. July 15, 2009). In fact, the April 2008 record explicitly notes that Claimant's right foot pain and swelling began just two weeks prior to that visit. (R. 635). Moreover, there are no notations in either the April or June 2008 records indicating they relate back to the relevant time period. Accordingly, the ALJ's failure to discuss this evidence was harmless error. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)(explaining the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination); *Austin v. Astrue*, No. 7:06-CV-00622, 2007 U.S. Dist. LEXIS 77892, at *18, 2007 WL 3070601, *6 (W. D. Va. Oct. 18, 2007) (holding that "[e]rrors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error") (citing *Camp v. Massanari*, 22 Fed. Appx. 311 (4th Cir. 2001)).

Finally, regarding the March 2010 emergency room records and x-ray from Onslow Memorial Hospital, the ALJ noted that while "the tomography in 2005 indicated lack of complete fusion in one area, . . . x-rays in 2010 showed solid fusion with no other deformities." (R. 17, 792). Claimant notes her pain and swelling were the result of one of the screws from her arthrodesis surgery performed in 2003 loosening. Pl.'s Mem. at 10. However, the March 2010 complaints of swelling and pain were the result of a change in her condition post-DLI. (R. 785, 792). If Claimant believes she is now disabled based on deterioration subsequent to the ALJ's decision, "[Claimant's]

remedy is to file a new application." *Adams v. Barnhart*, No. 1:05-CV-291, 2006 U.S. Dist. LEXIS 96822, at *26, 2006 WL 6142859, at *9 (W.D.N.C. Aug. 22, 2006) (quoting *Bowles v. Barnhart*, 392 F. Supp. 2d 738, 745-46 (W.D.Va. 2005)); *see also Wilmer v. Astrue*, No. 6:07-CV-2, 2008 U.S. Dist. LEXIS 1664, at *16-17, 2008 WL 112045, at *6 (W.D. Va. Jan. 8, 2008) (stating if claimant "is of the view that he is now disabled based on deterioration after the ALJ's . . . decision . . . , his remedy is to file a new application under the regulations applicable for such applications") (citing 20 C.F.R. §§ 404.620(a)(2), 416.330(b)).

Third, Claimant contends the ALJ "claimed that [Claimant] never showed any neurological deficits" in her left foot. Pl.'s Mem. at 10. A review of the ALJ's decision does not substantiate Claimant's claim. In particular, in summarizing the impact of Claimant's degenerative changes of her lumbar spine and right foot during the relevant time period, the ALJ noted, *inter alia*, that Claimant's gait was normal except for right heel walking and that Claimant had full strength of her legs with "*no significant neurological deficits,*" a finding supported by Dr. Murfin's evaluation. (R. 17) (emphasis added). Prior to this finding, however, the ALJ acknowledged Claimant's complaints in 2004 of left lower extremity pain related to a herniated disc. (R. 17, 306). Further, the ALJ acknowledged Claimant's complaints of left-sided back pain radiating down her left leg beginning in October 2008. (R. 17, 688). However, as the ALJ noted, a January 2009 MRI scan revealed Claimant's complaints were associated with *a new* recurrent disc herniation. (R. 17, 561, 688). The ALJ noted further that "[d]espite [Claimant's] complaints of persistent and left radicular symptoms, Dr. Hsu noted in July 2010 Claimant had not been seen for follow-up in nine months. (R. 17, 808). Accordingly, the ALJ's consideration of evidence regarding Claimant's feet was proper.

10

## II. The ALJ improperly considered the medical opinion evidence.

Claimant contends the ALJ improperly evaluated the medical opinions of Dr. Hsu, a treating physician, and Dr. Murfin, a state agency examining consultant.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. 20 C.F.R. § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. 20 C.F.R. § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."[2] *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* S.S.R. 96-2p, 1996 SSR

---

[2] The Social Security regulations provide that all medical opinions, including opinions of examining and non-examining sources, will be evaluated considering these same factors. 20 C.F.R. § 404.1527(e).

11

LEXIS 9, at *12, 1996 WL 374188, at *5; SSR 96-6p, 1996 SSR LEXIS 3, at *2, 1996 WL 374180, at *1.

1.  Dr. Hsu

Claimant contends the ALJ erroneously "refused to accept the limitations set out by Dr. Hsu in 2010 on the premise that they were given after the [DLI] and thus were irrelevant." Pl.'s Mem. at 11. Claimant implies Dr. Hsu's opinions as to Claimant's limitations relate back to the relevant time period in light of the fact he has been her treating physician since he performed her back surgery in 2005. *Id.*

The ALJ acknowledged implicitly the length, frequency, nature and extent of Claimant's treatment relationship with Dr. Hsu between March 2005 and November 2010 via multiple references to his treatment notes. (R. 371-71, 377-78, 670-88, 808-13). In considering the 2010 treatment records, the ALJ acknowledged Dr. Hsu's opinions stated therein that Claimant "was restricted from prolonged sitting or standing, lifting or carrying more than 10 pounds, and doing any bending or twisting." (R. 18, 809, 811-13). The ALJ stated, however, "those opinions are not accorded significant weight because they were rendered over two years after the [DLI] and [indicate] some deterioration in her back and foot conditions, and are not reflective of her functional abilities during the period in question." (R. 18).

The ALJ's finding is supported by substantial evidence. Dr. Hsu's treatment records from 2010 relate to a time more than two and a half years after the ALJ's December 2007 decision and no information is contained within these records relating the findings therein to Claimant's condition during the relevant time period. Indeed, Dr. Hsu's records explicitly note that Claimant's lumbar pain complained of in 2009 and 2010 started "around" October 2008 – almost one year after the ALJ's

decision. (R. 670-71, 675, 678, 680, 682, 684, 686, 688, 808, 810); *see Edwards v. Astrue*, No. 7:07-CV-48, 2008 U.S. Dist. LEXIS 13625, at *25, 2008 WL 474128, at *9 (W.D. Va. Feb. 20, 2008) ("The [additional records] do not relate back to the relevant time period as they were . . .[completed] over 6 months after the ALJ rendered his decision."). Moreover, as the ALJ noted, the records further suggest a deterioration in Claimant's condition and in particular, increased discogenic pain. (R. 808, 810); *see Adams*, 2006 U.S. Dist. LEXIS 96822, at *26, 2006 WL 6142859, at *9. Accordingly, the court finds the ALJ did not err in discounting Dr. Hsu's opinion.

2. <u>Dr. Murfin</u>

Dr. Murfin performed a one-time evaluation of Claimant on 22 January 2007 and opined that Claimant's right foot pain "is expected to limit prolonged standing or walking, but does not limit light housework, self-care activities or sedentary activities." (R. 451). While the ALJ acknowledged that Dr. Murfin "reported . . . that the claimant had some limitation in standing, walking and moving," the ALJ failed to assign a weight to Dr. Murfin's opinion. (R. 17). Dr. Murfin's opinion that Claimant is capable of sedentary activities contradicts the RFC finding of the ALJ that Claimant is capable of the full range of light work, which "requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." *See* S.S.R. 83-10, 1983 SSR LEXIS 30, at *14, 1983 WL 31251, at *6. As Claimant points out, Dr. Murfin's opinion that Claimant is only capable of sedentary work supports statements made by Claimant and her mother in 2005 and 2009, respectively, that Claimant must alternate between sitting and standing on a regular basis and cannot perform the lifting requirements of light work.[3] (R. 232-33, 708, 710-11). The ALJ did not

---

[3] Claimant also relies on the function reports from 2005 and 2009 in support of her inability to sit for prolonged periods of time. Pl.'s Mem. at 10. The court observes this contention is contrary to Dr. Murfin's opinion, on which Claimant relies in support of her alleged functional limitations,

13

explicitly reject Dr. Murfin's opinion or otherwise explain the inconsistency between Dr. Murfin's opinion and the ALJ's RFC, the resolution of which is material to whether substantial evidence supports the ALJ's RFC finding. *See Ivey v. Barnhart*, 393 F. Supp. 2d 387, 390 (E.D.N.C. 2005) (remand is appropriate where ALJ fails to discuss relevant evidence weighing against his decision) (citing *Murphy v. Bowen*, 810 F.2d 433, 438 (4th Cir. 1987)). Because this court finds that remand as to this issue affects the ALJ's RFC finding, it does not address the remaining argument raised by Claimant.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-38] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-43] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

---

that Claimant is capable of performing sedentary activities. (R. 451).

14

This, the 27th day of July, 2012.

_____
Robert B. Jones, Jr.
United States Magistrate Judge